UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DENIS COOKE, *on behalf of himself and all others similarly situated,*

Plaintiff,

-against-

FRANK BRUNCKHORST CO., LLC,

Defendant.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

23-CV-6333
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On March 22, 2024, this Court issued a Memorandum and Order granting, in part, Plaintiff Denis Cooke's motion seeking conditional certification as a Fair Labor Standards Act ("FLSA") collective action comprised of all former and current hourly workers of Defendant Frank Brunckhorst Co., LLC, at any point in time between August 23, 2020 and August 23, 2023. *See Cooke v. Frank Brunckhorst Co., LLC*, -- F. Supp. 3d -- , 2024 WL 1230231 (E.D.N.Y. Mar. 22, 2024) (the "Conditional Certification Order.").

On April 5, 2024, Defendant filed a Motion for Reconsideration of this Court's Conditional Certification Order, arguing that this Court erred in granting conditional certification of the FLSA collective action when it (i) found that Plaintiff asserted viable claims under the FLSA and (ii) declined to follow purportedly controlling precedent from the New York Appellate Division, Second Department. *See* Dkt. No. 29. As part of its Motion for Reconsideration, Defendant also requested that this Court clarify the scope of the collective action; namely, that the collective action should be limited to Defendant's hourly non-exempt employees paid on a bi-weekly frequency of pay at Defendant's distribution facility at 24 Rock Street in Brooklyn, New York ("the Brooklyn Facility").

For the reasons set forth in this Memorandum and Order, Defendant's Motion for Reconsideration is **GRANTED in part** and **DENIED in part**. This Court declines to vacate its Conditional Certification Order but finds that, in the absence of a sufficient opposition by Plaintiff, good cause exists to modify the scope of the collective action. As discussed below, the Court limits the collective to all former and current hourly non-exempt employees paid on a bi-weekly frequency of pay at the Brooklyn Facility at any point in time between August 23, 2020 and August 23, 2023.

## I. Background

The Court assumes the parties' familiarity with the facts and refers the parties to Section I of the Conditional Certification Order for a complete and thorough summation of the background facts and procedural history relevant to this action. *See Cooke*, 2024 WL 1230231, at *1-3. For purposes of addressing Defendant's Motion for Reconsideration, the relevant class claims in the Complaint are outlined herein.

Plaintiff asserts that Defendant failed to pay him and other similarly situated employees minimum wage and overtime for work performed. *See* Dkt. No. 1, ¶¶ 83-96. Additionally, Plaintiff asserts that when payment was actually remitted, Defendant's bi-weekly payment program contravened the FLSA and the New York Labor Law ("NYLL") by resulting in untimely payment. *Id*. at ¶¶ 40-44. That is because, pursuant to NYLL § 191(a), Plaintiff purports to be a "manual worker" employed by Defendant in the City of New York—therefore triggering Plaintiff's entitlement to pay on a weekly basis. *See generally id.* at ¶¶ 97-102. Plaintiff asserts that the harm caused to him included the incurrence of late fees, interest, and "other liabilities related to non-prompt payment of its wages." *Id*. at ¶ 47. On behalf of the collective, Plaintiff asserts that "[t]here are numerous similarly situated current and former employees of Defendant

who have been similarly *under* or *late* paid in violation of the FLSA…" *Id*. at ¶ 50 (emphasis added). Put simply by Plaintiff, the violations at issue revolve, in part, around Defendant's failure to "pay *promptly* and *completely* Plaintiff and the Class minimum wage and overtime wages for all hours worked greater than forty (40) per week in violation of [the NYLL]). *Id*. at ¶¶ 94-95 (emphasis added).

**A. Plaintiff's Motion for Conditional Certification**

On January 11, 2024, Plaintiff moved for conditional certification of a collective action under the FLSA. *See* Dkt. Nos. 18-21. In support, Plaintiff argued that he made the requisite showing that he and members of the FLSA collective are similarly situated. *See* Dkt. No. 19.

Specifically, in his brief, Plaintiff identified a common policy that he and other non-exempt employees were subject to that purportedly violated the FLSA: "failure to pay *promptly* Plaintiff's minimum wage and/or overtime." *Id*. at 11 (emphasis in original).[1] Plaintiff supported his motion with testimony of conversations with other non-exempt, hourly employees who confirmed to Plaintiff that "they, too, were denied prompt payment of both minimum wage and overtime compensation during the same time periods." *Id*.; Dkt. No. 20, at 2.

The crux of Plaintiff's argument relied on the fact that Plaintiff alleged that he was a "manual" worker as defined by the NYLL. Dkt. No. 19, at 12. Plaintiff argues that, as a manual worker, he and others similarly situated are entitled to weekly payments. *Id*. (citing NYLL § 191(1)(a)). Therefore, Defendant's biweekly payment schedule was alleged to facially contravene the weekly payment requirement for manual workers established by the NYLL. As to the FLSA, Plaintiff argues that "courts have long interpreted [the FLSA] to include a prompt payment requirement." *Id*. at 11 (quoting, *inter alia*, *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 56 (2d Cir.

[1] Citations to the parties' memoranda of law are to the ECF-bates numbered pages of those briefs.

1998)). Therefore, given the consistent interpretations of the FLSA and the NYLL in this Circuit, Plaintiff argued that it was proper to maintain a FLSA collective action on such grounds.

Defendant opposed conditional certification as inappropriate in this case. *See generally* Dkt. No. 22. While recognizing that findings on the merits are generally inappropriate at the conditional certification stage, Defendant noted that a careful analysis of the FLSA claims alleged by Plaintiff here was necessary to determine whether collective treatment is appropriate. *Id*. at 6.

Defendant first argued that Plaintiff failed to allege that he was not paid minimum wage or overtime wages in violation of the FLSA. *Id*. In support, Defendant pointed to Plaintiff's own paystubs to "confirm that he earned well above the applicable minimum wage rate and that he was paid overtime at the application over rate for all hours worked over 40 in any given week. *Id*. (citing Dkt. No. 20-3). Indeed, Defendant asserted that Plaintiff's sole substantive allegation is in fact a timely payment claim—rooted in Plaintiff's classification as a "manual worker." *Id*. at 6-7. Defendant maintained that this allegation is "plainly insufficient" to sustain a prompt payment claim under the FLSA. *Id.* at 12.

Defendant also contended that while the FLSA is generally interpreted to include a prompt payment requirement, it does not specify when "this wage must be paid." *Id.* at 7. Indeed, Defendant argued that Plaintiff should have been required to show that "Defendant missed payments, unreasonably delayed payments, paid him later than the regular biweekly payroll period, or otherwise deprived him of minimum wages or overtime pay to which he was entitled." *Id*. at 8. By failing to do so, Defendant argued that Plaintiff "failed to sustain his burden at this stage." *Id*. Stated otherwise, "because the FLSA does not require Plaintiff to be paid weekly, Plaintiff did not and cannot adequately show that [] Defendant violated the FLSA's prompt payment requirement solely by virtue of its implementation of a lawful biweekly payroll schedule." *Id*. at 9. Finally,

Defendant asserted that whether Plaintiff was a manual worker required to be paid weekly under the NYLL (and whether Defendant did pay him weekly) is "irrelevant to the analysis of conditional certification *under* the FLSA."). *Id*. at 9-10 (emphasis in original).

Additionally, Defendant asserted that Plaintiff cannot maintain his underlying NYLL claim for untimely payment because the New York Appellate Division, Second Department, recently confirmed that it does not recognize a private right of action for violations of NYLL § 191(1). *Id.* at 15. Relying on *Grant v. Glob. Aircraft Dispatch, Inc.,* 223 A.D.3d 712, 204 N.Y.S.3d 117 (2024) ("*Grant*"), Defendant argued that the Second Department rejected the reasoning that the failure to pay wages on a timely basis constitutes an "underpayment" and concluded that the payment of full wages on a "regular biweekly payday does not constitute a nonpayment underpayment of wages." Dkt. No. 22, at 10.

Finally, Defendant argued that Plaintiff failed to establish that he was similarly situated with the purported collective.

**B. The Conditional Certification Order**

On March 22, 2024, this Court granted in part Plaintiff's motion to conditionally certify a collective class. *See generally Cooke*, 2024 WL 1230231.

In finding that conditional certification is warranted, this Court found that Plaintiff had "met his minimal burden of showing that the potential opt-in class members are similarly situated for the purposes of conditional certification." *Id*. at *4. Specifically, this Court recognized that Plaintiff alleged that "Defendant failed to remit to Plaintiff and all others similarly situated timely and complete minimum wage and overtime payments for work performed in violation of the [FLSA] and the [NYLL]." *Id*. at *1. This Court also held that, as a purported "manual worker" in

New York City, Defendant would have been required to remit payment on a weekly basis by NYLL 191(1)(a). *Id*. at *5-6.

Therefore, citing to controlling precedent in this Circuit, this Court held that NYLL § 191 permits a manual worker to bring a civil action for the delayed payment of wages—even if the wages have subsequently been paid. *Id*. This Court, in its opinion, declined Defendant's invitation to analyze whether Plaintiff was in fact a manual worker within the meaning of the NYLL, noting that such a determination is a merits issue not ripe for adjudication at the collective certification stage. *Id*. at *8.

Accordingly, this Court granted conditional certification of "all former and current hourly workers of Defendant at any point in time between August 23, 2020 and August 23, 2023." *Id*. at *12.

**C. Defendant's Motion for Reconsideration**

On April 5, 2024, Defendant filed the instant Motion for Reconsideration of this Court's Conditional Certification Order. *See generally* Dkt. Nos. 29-30.

Defendant argues that its motion should be granted because this Court's Conditional Certification Order overlooked a "critical basis for denying conditional certification"—namely, that "Plaintiff has failed to set forth a viable claim under the FLSA." Dkt. No. 30 at 6. Defendant also requests that, should the Court decline to reconsider its decision in its entirety, that the Court clarify and confirm the scope of the collective and limit it to "hourly non-exempt employees paid on a bi-weekly frequency of pay at [the Brooklyn Facility]." *Id.* at 1.

In its motion, Defendant argues that the "Court relies *entirely* on allegations related to Plaintiff's claim that he was a manual worker under the [NYLL] and overlooks the fact the FLSA 'does not specify when a wage must be paid.'" *Id.* at 8 (emphasis in original) (citation omitted)).

Defendant notes that while this Court was correct in stating that the merits of a plaintiff's FLSA claim should not be evaluated at the first stage of certification, the applicable legal standard still required Plaintiff to allege a "plausible" violation of law with respect to a similarly situated collective. *Id*. Therefore, Defendant argues that "[i]t is entirely appropriate to consider whether Plaintiff has asserted a viable claim under the FLSA before conditionally certifying a collective action." *Id*. (emphasis in original). Defendant contends that, had that inquiry been undertaken, it would have been "immediately clear that collective treatment is not appropriate." *Id*. at 9.

Next, Defendant argues that it is undisputed that "Defendant paid the entirety of the collective action class regularly, bi-weekly, without delay, and on its normal paydays." *Id*. at 10. Defendant asserts that there are "no allegations that Defendant missed payments, unreasonably delayed payments, paid Plaintiff later than the regular biweekly payroll period, or otherwise deprived him of minimum wages or overtime pay to which he was entitled." *Id*. Defendant appears to argue that Plaintiff fails to allege minimum wage and overtime claims—and instead, is merely alleging an untimely payment claim.

Further, Defendant argues that Plaintiff's reliance on the NYLL's frequency of pay requirement is unavailing. Defendant contends that Plaintiff offered no authority for the premise that "an alleged violation of the NYLL constitutes an automatic violation of the FLSA's 'prompt payment' requirement." *Id*. at 13. Defendant argues that Plaintiff's failure to do so supports the fact that Plaintiff's classification is irrelevant under the FLSA. *Id*. As biweekly pay is permitted by the FLSA, Defendant maintains that Plaintiff fails to assert a proper wage claim under any section of the FLSA. *Id.*

Finally, Defendant renewed its argument that this Court overlooked controlling case law pertaining to Plaintiff's underlying NYLL claim. Specifically, Defendant contends that this Court

overlooked a recent decision denying a private right of action for violations of NYLL § 191(1) (requiring weekly pay for manual workers). *Id.* at 13-15. Pointing to a footnote in this Court's opinion, Defendant asserts that this Court improperly relied on *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 2019) ("*Vega*") and, as *Grant* is a Second Department case, *Grant* should be controlling by virtue of the Second Department's "geographical boundaries." *Id.* at 15.

## II. Legal Standards

The Second Circuit has described the standard for granting a motion for reconsideration as "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Person v. Mulligan Security Corp.*, No. 22-CV-2980 (AMD) (LB), 2024 WL 2111522, at *2 (E.D.N.Y. May 10, 2024) (quoting *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019)); *see also* Local Civ. R. 6.3 (providing that the moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked").

Stated differently, to succeed on a motion for reconsideration, the movant must show "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790)).

Significantly, "[a] motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

'second bite at the apple[.]'" *Weir v. Montefiore Medical Center*, No. 23-CV-4468 (KPF), 2024 WL 2049411, at *2 (S.D.N.Y. May 6, 2024) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also Shearard v. Geithner*, No. 09–CV–0963(JS)(ETB), 2010 WL 2243414, at *1 (E.D.N.Y. May 30, 2010) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."). The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10-CV-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## III. Discussion

### A. Defendant fails to meet the exacting standards for reconsideration

As a threshold matter, this Court finds that Defendant has failed to meet its burden for reconsideration. Defendant fails to present the "exceptional circumstances" required to meet its burden on a motion for reconsideration. *Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192 (VSB), 2021 WL 1978544, at *3 (S.D.N.Y. May 17, 2021) (explaining that "[a] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced"; additionally, it is not "a time to "advance new facts, issues or arguments not previously presented to the Court.") (internal citations and quotation marks omitted). Instead, Defendant both rehashes arguments set forth in its prior Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification and also presents wholly new arguments that could have, but were not, previously advanced.

For example, Defendant' first argument in favor of reconsideration—that its "pay practices comply with the FLSA's prompt payment standard as a matter of law"—is one that Defendant fully briefed in its opposition to collective certification, *see, e.g.* Dkt. No. 22, at 11-15; Dkt. No. 30, at 7-11; and one that the Court has already addressed.

Defendant also raises new arguments—such as Defendant's novel argument that Plaintiff's frequency of pay arguments should fail as a matter of law—without excuse as to why these arguments were not raised previously. These arguments are therefore not cognizable on a motion for reconsideration. *See Novomoskvsk Joint Stock Company "Azot" v. Revson*, 95-CV-5399 (JSR), 1999 WL 767325 at *1 (S.D.N.Y. Sept. 28, 1999) ([N]ew arguments ... are not to be considered [on a motion for reconsideration] unless there is some valid reason they could not have been previously advanced when the motion was originally argued."). That is especially true for Defendant's argument that "[the] NYLL's frequency of pay requirements are not read into the FLSA's prompt payment requirement." Dkt. No. 30, at 11-13. Indeed, Defendant already had the opportunity to advance this argument in its opposition to conditional certification. Dkt. No. 22, at 12-13. On reconsideration, Defendant merely asserts the exact argument but now invites the Court to review its prior Conditional Certification Order under a standard outlined in a District of Maine decision, *Basinger v. Wal-Mart Stores, Inc.*, No. 98-334-P-H, 1999 WL 33117106, at *3–5 (D. Me. Jan. 27, 1999). Dkt. No. 30, at 11-12. Such an invitation hardly qualifies as an "intervening change in controlling law" (*Virgin Atl. Airways, Ltd.*, 956 F.2d 1245 at 1255) and, in advising the court to adopt a differing view on "the interpretation of a federal statute," appears to be an attempt to advance a new theory that could have been raised in Defendant's original briefings.

Accordingly, this Court finds that Defendant has failed to meet its exacting burden on reconsideration by merely rehashing prior arguments or, in the alternative, advancing new legal theories that are not cognizable on a motion for reconsideration.

**B. Plaintiff asserted plausible claims for untimely payment**

But even if, *arguendo*, Defendant had met its burden on reconsideration, this Court's finding that Plaintiff properly alleged at least one policy or practice that runs afoul of the FLSA—"the practice of failing to remit prompt and timely payment"—remains unchanged. *Cooke*, 2024 WL 1230231 at *6, Dkt. No. 30, at 7-8.

Defendant argues that Plaintiff (and the Court) were incorrect in asserting that state statutes may be implicated in qualifying the FLSA's "prompt payment requirement." Dkt. No. 30 at 11. In support, Defendant cites to the aforementioned 1999 opinion from the District of Maine cautioning courts to be "doubly reluctant" in finding an interplay between federal and state employment statutes. *Id.* at 12 (quoting *Basinger*, 1999 WL 33117106, at *3-5).

The FLSA provides that "[e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage." *Rogers*, 148 F.3d at 55 (quoting 29 U.S.C. § 206(b)). The FLSA "does not specify *when* this wage must be paid." *Id.* (emphasis in original). "Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Id.* (citations omitted). While "the FLSA requires wages to be paid in a timely fashion," Second Circuit precedent "demonstrate that what constitutes timely payment must be determined by objective standards . . ." *Id.* at *57. Such considerations are intended to reflect the fact that the FLSA "was not designed to codify or perpetuate industry customs and contracts but to achieve a uniform national policy in terms of wages and hours." *Id.*

(quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981) (quotations omitted).

Indeed, "the FLSA sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours that might otherwise result from the free market." *Rogers*, 148 F.3d at 57. The FLSA sets federal minimum wage, overtime pay, equal pay, recordkeeping, and child labor standards for employers (29 U.S.C. §§ 201 *et seq.*) which can be "governed by an interplay of the FLSA and the NYLL." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 352 (S.D.N.Y. 2014). "Both the FLSA and the NYLL also govern, in different respects, the timing of payments from an employer to an employee. While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement." *Id.* (citing 29 U.S.C. § 206(a)); *see also, e.g.*, *Rogers*, 148 F.3d at 57 ("it is clear that the FLSA requires wages to be paid in a timely fashion"); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir.1960) ("While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities. . . ."). Finally, under the FLSA, late wages are considered a form of unpaid wages. *See Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943).

In setting a "national floor," Congress has empowered states to augment protections conferred by the FLSA by statute. For example, while the FLSA sets federal minimum wage standards, "the minimum wage applicable to an employee in New York is governed by an interplay of the FLSA and the NYLL." *See Belizaire*, 61 F. Supp. 3d at 352-353 (explaining that, where state law conferred greater protection—like a higher minimum wage—state law controlled).

Indeed, a similar arrangement was contemplated by New York's legislature in devising

Labor Law § 191, whose legislative purpose "is to protect workers who are generally "dependent upon their wages for sustenance." *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, 681 F. Supp. 3d 58, 73 (W.D.N.Y. 2023) (quoting *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (1989)). The New York Labor Law has identified "manual workers" as class of individuals who "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191 (1)(a)(i). Therefore, where the FLSA declined to set an exact frequency of pay requirement, the FLSA has allowed states—like New York—to augment protections where necessary, the latter which tracks the spirit of the FLSA.

Courts in this Circuit have found defendants to have violated the FLSA by failing to issue prompt payment pursuant to NYLL § 191. *See, e.g., Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 147 (E.D.N.Y. 2023) ("This Court recognizes the instant Complaint does not allege overtime claims in violation of the FLSA but rather contends Defendants violated the [the FLSA] by failing to issue prompt payment."); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417 (JLS) (HBS), 2021 WL 3914297, at *4 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) ("declin[ing] to reject" proposed FLSA untimely payment claims brought by purported manual workers pursuant to Section 191); *see also Anzures v. Maredin Rest. Corp.*, No. 22-CV-2798 (EK) (JRC), 2024 WL 1376812, at *15 (E.D.N.Y. Jan. 24, 2024), *report and recommendation adopted*, 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024) (awarding liquidated damages pursuant to NYLL § 191).

Here, at this first stage of conditional certification, Plaintiff has adequately alleged that the Defendant may be liable under the FLSA's prompt payment requirement upon a finding that weekly payment—and not bi-weekly payment—should have been remitted to Plaintiff (and the

putative class). Plaintiff has alleged that his job duties included, but were not limited to, "customer service, general labor; building maintenance and repair, heavy and light cleaning and material moving, etc." Dkt. No. 1, at ¶ 19. Under NYLL § 190(4), "manual worker" means "a mechanic, workingman or laborer." More helpfully, the New York Department of Labor has long interpreted the term to include "employees who spend more than 25 percent of their working time performing physical labor." N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009). By this criterion, carpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be "manual workers." *Beh*, 2021 WL 3914297, at *3. Whether Plaintiff (and the putative class members) are actually "manual workers" or whether actual violations of law occurred are merit-based determinations that are inappropriate at this stage. *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER) (JAM), 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024) ("When applying this lenient evidentiary standard, a court evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").

In support of its contention that "the case law is clear that weekly pay in not required under the FLSA," (Dkt. No. 30, at 9) (emphasis in original), Defendant points to its sole authority from this Circuit in *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016) for the premise that the FLSA expressly permits bi-weekly pay. But a review of *Coley* fails to clarify its relevance here. In part, *Coley* actually held that Defendant was liable for violating the FLSA and the NYLL "by chronically failing to pay Plaintiffs timely and in full" pursuant to NYLL § 191.

Further, Defendant argues that that "the imputation of the NYLL standard for frequency of wage payments would run counter" to Congress' intent for the FLSA "to achieve a uniform

national policy of guaranteeing compensation for all work or employment engaged by employees governed by [the FLSA]." Dkt. No. 30, at 12. But this argument is unavailing. There is no indication—from Defendant's authorities in support or the FLSA itself—that Congress intended on subjecting every employer and employee governed by the FLSA to a bi-weekly payment regime.

Accordingly, the Court declines to reconsider its ruling on Plaintiff's untimely payment claims.

**C. New York Labor Law Section 191(1) confers Plaintiff a private right of action**

Defendant argues that this Court overlooked the Second Department's decision in *Grant*. Defendant takes issue with Footnote 3 of this Court's opinion finding that Plaintiff is entitled to recover under NYLL 191. *See* Dkt. No. 30, at 8-9. Defendant argues that *Grant* is controlling here as the Second Department covers a similar geographical area as this District. *Id.* at 14.

In *Grant*, the Second Department held that the payment of full wages on a regular biweekly payday does not constitute a "nonpayment" or "underpayment" of wages. *Id.* In support, Defendant points to *Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, *7 (W.D.N.Y. Mar. 7, 2024) ("*Galante*") (agreeing with the Second Department's decision in *Grant* and holding that section 198(1-a) does not provide a private right of action, either express or implied, for violations of section 191(1)(a)). Therefore, as the Second Department found that no private right of action exists under NYLL 191(1), Defendant argues that this Court erred in finding otherwise.

Since *Grant* was published but before Defendant's Motion for Reconsideration was filed, two courts in this District have issued opinions expressly declining to follow *Grant*. In *Levy v. Endeavor Air Inc.*, No. 21-CV-4387 (ENV) (JRC), 2024 WL 1422322, at *1 (E.D.N.Y. Mar. 29,

2024), the court denied the defendant's motion for reconsideration in light of *Grant*. "In accord with every other court in this Circuit that had, at that time, considered whether § 191 provides a private right of action, the [*Levy* court] applied *Vega* to find that it did. *Id.* at *1.

The *Levy* court reasoned that *Grant* is "undermined by the statute's legislative history, and courts within this Circuit find that history persuasive in declining to follow *Grant*." *Id.* (citing *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024)). The *Levy* court explained that the "2010 amendments to § 198 'intend[ ] to allow employees 'to recover the full amount of any underpayments'—an intention best served by recognizing that 'money has a real time value,' and thus a late payment is a qualifying underpayment." *Levy*, 2024 WL 1422322, at *2 (citing *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC) (JAM), 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024)). Accordingly, the *Levy* court was "persuaded that the New York Court of Appeals would adopt *Vega*'s holding that §§ 191 and 198 expressly confer upon employees a private right of action." *Levy*, 2024 WL 1422322, at *2.

The Court in *Levy* also expressly rejected *Galante* (which Defendant relied on), noting that, "[w]ith one exception, every court within this Circuit that has confronted the split in appellate authority has remained persuaded by *Vega*." *Id.* Indeed, "post-*Grant* federal district courts have rejected the *Grant* holding that the absence of explicit reference to 'late payments' in § 198—the enforcement mechanism for article 6 of the NYLL—means that that section contains no express right of action for § 191 violations, reasoning instead that late payments are underpayments, and therefore § 198's language encompasses § 191 violations." *Id.* (collecting cases).

Moreover, the plain language of § 191 conflicts with the *Grant* court's reading that "[s]ection 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule." *Zachary*, 2024 WL 554174 at *8. NYLL § 191(2)

"provides that '[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.'" *Id*. Thus, "[a] judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary." *Id*.; *Garcia*, 2024 WL 1142316, at *6 (same); *Levy*, 2024 WL 1422322, at *2. In sum, the *Levy* court found that NYLL § 191 "confers upon employees a private right of action." *Id*. at *2.

Similarly, another court in this District recently declined to follow *Grant*. *See Garcia*, 2024 WL 1142316, at *6. The *Garcia* court acknowledged that "New York courts are currently split as to whether Section 191 . . . confers a private right of action, and the New York Court of Appeals has not yet addressed this question." *Id*. at 6. Concluding that following *Grant* would be inconsistent with the legislative scheme underlying Section 191, the *Garcia* court also found that the New York Court of Appeals is likely to adopt the reasoning in *Vega*. Therefore, the plaintiff's Section 191 claim in *Garcia* was allowed to proceed.

Here, neither party acknowledged the *Levy* and *Garcia* decisions, nor the other numerous S.D.N.Y. and N.D.N.Y. decisions declining to follow *Grant* (or *Galante* for that matter). *See, e.g., Bazinett v. Pregis LLC*, No. 1:23-CV-790 (MAD) (ML), 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024) ("The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*."); *Urena v. Sonder USA Inc.*, No. 22 CIV. 7736 (VM), 2024 WL 1333012 (S.D.N.Y. Mar. 28, 2024) (inviting the parties to consider whether their case should be stayed pending the Court of Appeal's resolution of the department split); *Zachary*, 2024 WL 554174 *8 (S.D.N.Y. Feb. 12, 2024) ("Although this Court cannot predict with certainty how the New York Court of Appeals would rule, the reasoning in *Vega* and the dissent in *Grant* persuade

the Court that the Court of Appeals would likely agree with *Vega* and reject *Grant*."); *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718 (VSB) (JLC), 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024) ("The *Zachary* court carefully analyzed the decisions in *Vega* and *Grant* and, in agreeing with *Vega*, concluded that a late wage claim under Section 191 is privately actionable 'even if that right is not expressly codified in the NYLL.' . . . To the extent it is necessary to reach that question, I agree with the court's analysis in *Zachary* and recommend it be followed here.") (internal citations omitted).

This Court sees no valid reason to modify its original ruling or depart from other persuasive rulings from this District. This Court therefore declines to reconsider its application of *Vega* to this instant matter.

**D. Scope of the collective class**

Defendant requests that the Court clarify and modify the scope of the collective class. Dkt. No. 30, at 15. The Court's March 22, 2024 opinion conditionally certified a class composed of "all former and current hourly workers of Defendant at any point in time between August 23, 2020 and August 23, 2023." *See Cooke*, 2024 WL 1230231 at *12. Defendant proposed that notice should be sent only to Defendant's hourly non-exempt employees paid on a bi-weekly frequency of pay at Defendant's Brooklyn Facility. Dkt. No. 3018 1259, at 15. Defendant asserts that it maintains a principal place of business in Sarasota with employees in facilities nationwide. *Id.* Given that Plaintiff does not "allege that he is similarly situated to any broader group of employees beyond those located in the Brooklyn facility," Defendant avers that such a limitation in scope is warranted. *Id.*

This Court reconsiders its Conditional Certification Order in this regard. While this Court invited Plaintiff to opine on this request (Text Order dated April 5, 2024), Plaintiff failed to

sufficiently do so by declining to meaningfully oppose Defendant's request. *See Trinidad*, 962 F. Supp. 2d at 558 ("Although all Pret stores in New York City are owned by the same parent company, plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation.").

Finding that Defendant has proffered a compelling reason to limit the scope of the putative collective class, this Court hereby modifies its earlier ruling to limit the scope of the collective class to all former and current hourly non-exempt employees paid on a bi-weekly frequency of pay at the Brooklyn Facility at any point in time between August 23, 2020 and August 23, 2023.

**E. Subsequent motion practice**

While this Court finds that Defendant's Motion for Reconsideration fails to meet the exacting burden set forth in this Circuit, this Court notes that Plaintiff's Complaint may contain certain deficiencies that may be cured by an Amended Complaint—especially since it is unclear whether some of Plaintiff's claims would survive dispositive motion practice. Additionally, this Court notes that Defendant declined to avail itself to the opportunity to engage in early dispositive motion practice by choosing to interpose an Answer (Dkt. No. 11) and is only currently entertaining the idea of moving pursuant to Fed. R. Civ. P 12(c) (Dkt. No. 30, at n.1). The Court thus agrees that motion practice *may* help narrow certain claims ahead of discovery and may facilitate early resolution.

The Court will address Defendant's anticipated motion to dismiss (Dkt. No. 33), the parties' motion to stay discovery (Dkt. No. 37); and a potential resolution at the May 22, 2024 status conference.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration is **GRANTED in part** and **DENIED in part**.

The Court further orders that:

(1) By **June 7, 2024**, Defendant shall produce to Plaintiff, in computer readable format, the full names, current home address or last known address, cell phone number, work and personal email addresses, and dates of employment with job titles of all former and current hourly non-exempt employees paid on a bi-weekly frequency of pay at the Brooklyn Facility at any point in time between August 23, 2020 and August 23, 2023.

(2) By **May 29, 2024**, the parties are to meet and confer in good faith, and by **June 7, 2024**, the parties shall file a revised Proposed Notice and consent form that complies with the directives set forth herein;

(3) By **July 1, 2024**, Plaintiff or his designated representative shall cause a copy of the Notice and Consent to Join Form to be disseminated to the covered employees by first class mail, email, and text message.

Dated: Brooklyn, New York
May 18, 2024

**SO ORDERED.**

*/s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge