UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DENIS COOKE,

Plaintiff,

- against -

FRANK BRUNCKHORST CO., LLC,

Defendant.

Case No. 23-cv-06333-JAM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ……………………………..1
**STATEMENT OF FACTS**……………………………………1
**STANDARD OF REVIEW** ………………………………..2
**ARGUMENT**

DEFENDANT FAILS TO ESTABLISH THAT PLAINTIFF COULD NOT PERFORM ESSENTIAL FUNCTIONS OF HIS JOB ………………………………2

DEFENDANT FAILS TO ESTABLISH THAT IT ENGAGED IN INTERACTIVE PROCESS TO ASSESS WHETHER PLAINTIFF'S DISABILITY COULD BE REASONABLY ACCOMMODATED………………10

## TABLE OF AUTHORITIES

### Statutes, Rules and Regulations

42 U.S.C. § 12101 et seq. (Americans with Disabilities Act) …………………………4

N.Y.S. Exec. Law § 290 et seq. ……………………………………………………...12

N.Y.C. Admin. Code §§ 8-101 et seq. …………………………………………………12

29 C.F.R. § 1630.2 ………………………………………………………………… 6, 9, 10, 11

Fed. R. Civ. P. 56(a)……………………………………………………………………4, 5

### Cases

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ....................................................5

*Betances v. MetroPlus Health Plan, Inc.*, 2021 WL 2853363 (S.D.N.Y. 2021).............12

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir. 1995) ..................................7

*Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) ........................................11

*Hall v. United States Postal Serv.*, 857 F.2d 1073 (6th Cir. 1988) .................................7

*Henchey v. Town of North Greenbush*, 831 F. Supp. 960 (N.D.N.Y. 1993) ....................7

*Luciano Russo & George Messiha v. National Grid USA*, 2026 WL 1492969 (E.D.N.Y. 2026) ..............................................................................................11

*McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013) ...........................................7, 10

*Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019) .............................................5

*Noel v. BNY-Mellon Corp.*, 514 F. App'x 9 (2d Cir. 2013) .............................................12

*Rogoz v. City of Hartford*, 796 F.3d 236 (2d Cir. 2015) ..................................................5

*Ryan v. Grae & Rybicki*, P.C., 135 F.3d 867 (2d Cir. 1998) ............................................6

*Sheng v. M&T Bank Corp.*, 848 F.3d 78 (2d Cir. 2017) ...................................................11

*Stone v. City of Mount Vernon*, 118 F.3d 92 (2d Cir. 1997) .............................................6

*Sullivan v. Nat'l Express LLC*, 2023 WL 6279255 (S.D.N.Y. 2023) ................................8

*Wenner v. City of New York Dep't of Sanitation*, 1996 WL 30289 (S.D.N.Y. 1996) ........8

Pro se[1] Plaintiff Denis Cooke respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This case is about Defendant Frank Brunckhorst Co., LLC's ("Defendant" or "Brunckhorst") unwillingness to continue to permit Plaintiff Denis Cooke ("Plaintiff" or "Cooke") to continue his work with the accommodations required by his disabilities resulting from a 2018 stroke, as required by the Americans with Disabilities Act . 42 U.S.C. § 12101 *et seq.* (1990) (the "ADA"). In 2021, Defendant terminated Plaintiff's employment after over ten years of service, providing little explanation beyond a cursory statement that his disability could no longer be accommodated. Defendant's argument that Plaintiff was unable to perform essential functions of his job with his accommodations is clearly pretextual and does not reflect the reality of the job performed. Defendant argues merely that Plaintiff's limitations *could* have limited his ability to perform based on a bad-faith interpretation of the essential functions of the job; Defendant was unable to establish any confirmed link between Plaintiff's limitations and job performance. Further, any arguments regarding Plaintiff's alleged lackluster job performance were only raised in the context of litigation as a pretext, and were not communicated to the Plaintiff at the time of his termination. Lastly, Defendant failed to engage in an interactive process to determine the viability of any accommodations before terminating Plaintiff. Defendant's arguments do not suffice to establish that Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## STATEMENT OF FACTS

[1] This Memorandum of Law was prepared with assistance from the City Bar Justice Center's Federal Pro Se Assistance Project.

Plaintiff refers the Court to his Rule 56.1 Counter-Statement and Affirmation in Opposition to Summary Judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a genuine dispute of material fact precludes the Court from granting summary judgment. *See Anderson*, 477 U.S. at 248. The Court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *See Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (internal quotation marks and citation omitted). The Court must view all facts in the light most favorable to the non-movant, drawing reasonable inference in their favor. *See* Fed. R. Civ. P. 56(a); *see also Anderson*, 477 U.S. at 255.

**ARGUMENTS**

Defendant is not entitled to summary judgment for the following reasons.

**I. Defendant Fails to Establish That Plaintiff Could Not Perform Essential Functions of His Job**

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d

337, 352 (2d Cir. 2019). In this case, both parties agree that the Plaintiff is a person with a disability under the ADA and that the employer had notice of this disability. However, the Defendant attempts to argue that the Plaintiff could not perform essential functions of his job even with accommodations. Plaintiff disagrees. Determining whether or not Plaintiff was able to perform essential job functions remains a question of fact.

The Second Circuit has instructed courts to look to the Equal Employment Opportunity Commission ("EEOC") regulations for guidance interpreting the ADA as to what constitutes an essential function of the job. See, e.g., *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). The EEOC regulations provide a three-factor test on the essential function issue. Courts should consider whether (1) the function is at the core of the position, (2) there are a "limited number of employees available among whom the performance of that job function can be distributed," and (3) the function is "highly specialized." 29 C.F.R. § 1630.2(n)(2); *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997). The EEOC inquiry is "fact-intensive," *Stone*, 118 F.3d at 97, and evidence of whether a particular function is essential includes, but is not limited to the following factors:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs."

29 C.F.R. § 1630.2(n)(3); *Stone*, 118 F.3d at 97.

Defendant argues throughout its Motion for Summary Judgment that Plaintiff was unable to perform the essential duties of his job as an IT Support Systems Specialist in its

Brooklyn warehouse. However, Defendant relies almost entirely on the "Work Environment" portion of the position's Job Description, and does not cite to specific work the Defendant could not do when requested. Further, Defendant does not establish any actual failures of Plaintiff in the role; rather, they suggest that Plaintiff's accommodations *could have* resulted in IT Support lapses. Throughout its argument, Defendant does not identify any actual failures or work disruptions related to Cooke's tenure.

Determining the 'essential functions' requires that the court not merely rely on the employer's say-so or a single job description; rather, the court must conduct "a fact-specific inquiry into both the employer's description of a job and *how the job is actually performed in practice*." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (emphasis added) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir.1995)). Determining essential functions of a job "should be based upon more than statements in a job description and should reflect the actual functioning and circumstance of the particular enterprise involved." *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (in which summary judgment was denied as "the determination of whether physical qualifications are essential functions of a job requires the court to engage in a highly *fact-specific* inquiry"). This 'fact-specific inquiry' must consider the evidence as laid out in the EEOC regulations at 29 C.F.R. § 1630.2(n)(3), and when questions of fact exist, summary judgment must be denied. *See Henchey v. Town of North Greenbush*, 831 F. Supp. 960, 966 (N.D.N.Y. 1993).

By way of example relevant to Defendant's argument that Plaintiff was restricted from lifting the weights suggested in the Work Environment section of the Job Description, several courts have refused to grant summary judgment, ruling that questions of fact remain as to whether the ability to lift or heavy lifting is an essential function of a position. *See id.* at 966

("heavy lifting" according to job description is not necessarily an essential function of a laborer job); *Hall*, 857 F.2d at 1079-80 ("In short, we think that there are material factual questions as to whether the lifting requirement was an essential function of the job, as to justify [the employer's actions]"); *Wenner v. City of New York Dep't of Sanitation*, No. 92 CIV. 9389 (JFK), 1996 WL 30289, at *3 (S.D.N.Y. Jan. 24, 1996); *Sullivan v. Nat'l Express LLC*, No. 21-CV-5789 (KMK), 2023 WL 6279255, at *10 (S.D.N.Y. Sept. 26, 2023)("However, the Court notes that there is another question of fact as to whether the ability to ;lift' is an essential function of the position *at all* given the rarity of this emergency..."). Thus, it is clear that simply because something is listed in a job description does not render it "essential" without further inquiry. In this case, Plaintiff has attested that heavy lifting and overnight shifts were not frequent components of his role as a local IT Support Specialist. *See* Plaintiff Denis Cooke's Rule 56.1 Counter-Statement in Opposition to Defendant's Motion for Summary Judgment ("56.1 Counter-Statement") ¶¶ 26, 27, 34-40.

Even if Defendant chooses to rely on the Job Description for Plaintiff's position, Plaintiff is able to meet all of the requirements listed in the Job Description as "Essential Duties and Responsibilities." *See* 56.1 Counter-Statement ¶ 10. Throughout Plaintiff's deposition, as reflected in the 56.1 Counter-Statement, Plaintiff described performing the tasks required to meet the essential functions of the role, as set forth in the job description. For example, he describes:

- Installing or assisting service personnel in installation of hardware and peripheral components, such as monitors, keyboards, printers, disk drives, and other similar or related equipment, *see* 56.1 Counter-Statement ¶ 22.
- Performing network troubleshooting to isolate and diagnose common network problems, *see* 56.1 Counter-Statement ¶ 39.

- Installing wiring as required for network and telephony systems, *see* 56.1 Counter-Statement ¶ 27.

Rather, Defendant argues that portions of the Job Description under the heading "Work Environment" are essential functions of the job. Citing these bullet points in the Job Description, Defendant argues that Plaintiff's restrictions rendered him unable to adequately serve as an IT Support Services Specialist. However, Defendant failed to establish that those bullet points are essential job factors under the EEOC's test or that Plaintiff was unable to perform them – genuine issues of fact remain.

Defendant argued that in not being able to come to the warehouse outside of daylight hours, Plaintiff was missing core working hours. However, Defendant failed to mention that as of approximately 2020, no IT Support Specialists were regularly staffed during the overnight hours. Rather, by coincidence, during the time of Plaintiff's extended medical leave, the official shifts for the IT Support Specialist team no longer required overnight coverage. Rather, the IT Support Specialist team was on-site from 6:00AM to 5:00PM daily. Any earlier shifts were emergency calls only. Indeed, the vast majority of the shifts noted in the 18 months of time records for Plaintiff's coworker Brian Cruz, included in Defendant's motion as an Exhibit to the Alvin Cunningham Declaration, begin around 7:00AM. Only roughly two dozen shifts in those 18 months began before 2:00AM. Thus, "the consequences of not requiring the [plaintiff] to perform the function" are negligible, 29 C.F.R. § 1630.2(n)(3)(iv), and it is evident that Plaintiff's inability to commute in the dark did not impact an essential function of the job.

Defendant further tries to establish that Plaintiff was limited in his ability to perform the essential duties of his role because of his physical limitations with respect to his limited abilities to climb to heights or lift significant weight. However, Defendant only references

hypothetical scenarios in explaining why those limitations inhibited Plaintiff's job performance. Defendant describes the weight of several pieces of equipment or the spaces in which that equipment are stored. However, Defendant does not describe instances in which Plaintiff was unable to perform work with respect to those limitations. In fact, Plaintiff explained in his deposition that his team was required to share the lifting of heavy equipment across multiple staffers, by company policy. Cooke Deposition Transcript, 33:11-15. Plaintiff also attested that most equipment described in dramatic terms by Defendant was in fact either replaced by lighter equipment or serviced by an outside vendor. Cooke Aff. ¶ 12, 15-16; Cooke Dep. Tr. 65: 4-21. Again, it is clear that these physical requirements are not only not considered essential by the employer's own Job Description, but also do not satisfy the factors set forth by the EEOC for this analysis ("Evidence of whether a particular function is essential includes: ... the amount of time on the job performing the function." 29 C.F.R. § 1630.2(n)(3)(iii)).

Although employers are due some deference in establishing the "essential functions" of any given role, courts require that how the position is actually performed, and not merely the job description or the employer's say-so, must be considered in determining which functions are essential. *McMillan*, 711 F3.d at 126 (citation omitted).

Thus, Defendant is not permitted to simply refer to tasks the Plaintiff could have performed and deem them essential; rather, the court must determine the reality of the role's day-to-day responsibilities and practices in determining essential functions.

## II. Defendant Fails to Establish that It Engaged in Interactive Process to Assess Whether Plaintiff's Disability Could Be Reasonably Accommodated

Whether or not a disability can be reasonably accommodated is intended by the ADA to be a fact and circumstances-specific analysis that must be tailored to the role and the individual. "[T]he ADA contemplates that employers will engage in an interactive process with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated." *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). The EEOC's regulations state, "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability .... This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). An employer's failure to engage in an interactive process can be evidence showing discrimination under the ADA. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d. Cir. 2017) (citations omitted).

While an "interactive process" is not strictly defined, courts have provided guidance in how to assess whether such engagement occurred, suggesting, for example that "an employer engages in an interactive process by ... meeting with the employee who requests an accommodation, requesting information about the condition ..., asking the employee what he or she specifically wants ... and offering and discussing available alternatives when the request is too burdensome." *Sheng*, 848 F.3d at 87 n.3. Importantly, the interactive process must include identification of potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(3); *see also Luciano Russo, George Messiha, Plaintiffs, v. National Grid, USA, Defendant*, No. 23-CV-03954 (NCM) (TAM), 2026 WL 1492969, at *13 (E.D.N.Y. May 28, 2026) ("Even if an employer receives an employee's request and internally considers it, a reasonable juror could still find that the employer did not engage in an interactive process if the employer refuses to budge

from offering a single potential accommodation on a take-it or leave-it basis ...”). Defendant failed to engage in any meaningful interactive process with Plaintiff throughout his employment with accommodations, and in particular at the time of his termination, in that Defendant was unwilling to explore alternatives with the Plaintiff that were mutually acceptable.

Similarly, the New York State Human Rights Law, N.Y.S. Exec. Law § 290 et seq. (“NYSHRL”) also contemplates that employees and employers will engage in an interactive process. *See Noel v. BNY-Mellon Corp.*, 514 F.App’x 9, 10 (2d Cir. 2013) (summary order). The New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (“NYCHRL”) requires an even more demanding standard, mandating “cooperative dialogue” between the parties. *Betances v. MetroPlus Health Plan, Inc.*, No. 20-cv-02967, 2021 WL 2853363, at *8 (S.D.N.Y. July 7, 2021).

During Plaintiff’s time working with accommodations, his employer merely requested forms from his medical provider and permitted his return to work. Cooke Aff. ¶¶ 5-6. Defendant never communicated to Plaintiff about any issues with his accommodations, nor did they attempt to negotiate the accommodations in order to best serve the essential job functions. By failing to engage in an interactive process throughout Plaintiff’s employment, Defendant did not satisfy the regulatory requirements of the ADA. It is disingenuous to now claim that the Plaintiff failed under the accommodations without providing notice or opportunity to find accommodations to satisfy the Plaintiff’s restrictions within the essential fuctions of the position.

Upon Plaintiff’s termination, the Defendant provided no alternative accommodations when it had decided that the restrictions proposed by Plaintiff’s physician were no longer workable. In actuality, Plaintiff received conflicting messages from Defendant’s Human

Resources representative Robbin Haynes and from his manager, Michael Roberts. Haynes summarily dismissed the Plaintiff from his position, with no discussion of alternative arrangements or accommodations. Meanwhile, Roberts acknowledged Plaintiff's accommodations and that performance of his job could continue with those accommodations. Cooke Aff. ¶¶ 23-24. It is clear that no interactive process occurred, as the final determination regarding Plaintiff's position was made without consideration of options that even Plaintiff's manager seemingly acknowledged.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

Denis Cooke
8 Highland Court
Saugerties NY 12477
(347) 569-3727

Date:
Saugerties, NY

**AFFIRMATION OF SERVICE**

I, Denis Cooke, declare under penalty of perjury that I have served a copy of the foregoing Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment upon

**Jeffrey A Miller and Sonia Setia of Spencer Fane LLP,**

whose address is

771 Third Avenue

New York NY 10017

by the following method:

*Check one*

**__*X*__ Email**

____ US Mail.

____ Hand delivery.

____ Fed Ex, UPS, or other private carrier.

Dated: 06 06 2026

Denis Cooke

Signature

8 Highland Court

Saugerties, NY 12477