UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DENIS COOKE,

Plaintiff,

- against -

FRANK BRUNCKHORST CO., LLC,

Defendant.

**Case No. 23-cv-06333-JAM**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .......... 5
ARGUMENT .......... 6
I. PLAINTIFF COULD NOT PERFORM THE ESSENTIAL FUNCTIONS OF HIS JOB, WITH OR WITHOUT ACCOMMODATION .......... 6
II. PLAINTIFF CANNOT OVERCOME DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY REASON FOR TERMINATION .......... 12
III. DEFENDANT ENGAGED IN THE INTERACTIVE PROCESS .......... 14
IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER STATE AND LOCAL LAW .......... 15
CONCLUSION .......... 16
WORD COUNT CERTIFICATION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anderson v. Coors Brewing Co.*,
181 F.3d 1171 (10th Cir. 1999) ....................11

*Carey v. Cnty. of Albany*,
No. 114 Civ. 420 (GLS)(CFH), 2016 WL 4098598 (N.D.N.Y. July 28, 2016) ....................10

*Davis v. Bombardier Transp. Holdings (USA) Inc.*,
2013 WL 6816605 (E.D.N.Y. Dec. 24, 2013), *aff'd*, 794 F.3d 366 (2d Cir. 2015) ....................11

*Di Iorio v. Cnty. of Suffolk*,
No. 21-CV-01273 (JMW), 2024 WL 1908602 (E.D.N.Y. May 1, 2024)....................7, 15

*Frilando v. New York City Transit Auth.*,
513 F.Supp.3d 356 (S.D.N.Y. 2021)....................15

*Galimore v. City Univ. of New York Bronx Cmty. Coll.*,
641 F. Supp. 2d 269 (S.D.N.Y. 2009)....................13

*Hernandez v. Int'l Shoppes, LLC*,
100 F. Supp. 3d 232 (E.D.N.Y. 2015) ....................7

*Hunt-Watts v. Nassau Health Care Corp.*,
43 F. Supp. 3d 119 (E.D.N.Y. 2014) ....................8, 10

*Hyek v. Field Support Serv., Inc.*,
702 F.Supp.2d 84 (E.D.N.Y. 2010) ....................12

*Maher v. All. Mortg. Banking Corp.*,
650 F.Supp.2d 249 (E.D.N.Y. 2009) ....................12

*McNeil v. Union Pac. R.R. Co.*,
936 F.3d 786 (8th Cir. 2019) ....................8

*Noll v. Int'l Bus. Machines Corp.*,
787 F.3d 89 (2d Cir. 2015)....................15

*Shannon v. New York City Transit Auth.*,
332 F.3d 95 (2d Cir. 2003)....................15

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997)....................13

*Stone v. City of Mount Vernon*,
118 F.3d 92 (2d Cir. 1997).....7, 10

*Walker v. City of New York*,
63 F. Supp. 3d 301 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 74 (2d Cir. 2015).....13

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000).....13

*Wyatt v. Maryland Inst.*,
No. CIV.A. RDB-10-2584, 2012 WL 739096 (D. Md. Mar. 7, 2012).....8

**Statutes**

Americans with Disabilities Act ("ADA").....5, 7, 11, 14

**Other Authorities**

Local Rule 7.1.....17

Local Rule 56.1.....7, 12

## PRELIMINARY STATEMENT

In his Opposition, Plaintiff improperly attempts to substitute his personal opinions and speculation for the legitimate business judgment of Defendant, while ignoring the evidence and applicable standards upon which his claims must be dismissed.

The record is clear that Plaintiff could not perform the essential functions of his role. It is undisputed that he performed a specialized IT role on a small team and that he could not perform work during most of the peak hours of production at Defendant's facility, which posed tremendous danger to operations. It is further undisputed that Plaintiff could not work in confined spaces yet his essential troubleshooting tasks involved working with cables, wires, and access points in such spaces. As Plaintiff concedes, it was always possible that an IT team member would need to physically locate such cables, wires, and access points to perform the role. No accommodation existed that could have allowed Plaintiff to work on-site during the peak pre-dawn hours or work in confined spaces when he was medically restricted from doing so.

The record is also clear that Plaintiff's subpar and declining job performance constitutes a legitimate, non-discriminatory reason for termination, and Plaintiff has not contested this point. Plaintiff failed to meet not only the expectations of his supervisors but also his own expectations of what he should have achieved before his dismissal. Year after year, Plaintiff and his supervisors identified the need for Plaintiff to improve his knowledge and capabilities in handling network infrastructure and Oracle-related issues, yet he failed to do so each year, culminating in a 2.2 out of 5 rating—his 3rd straight year of declining and substandard ratings. Shortly thereafter, Defendant's decision-makers met to discuss Plaintiff's performance deficiencies. They sought out an updated ADA accommodation form to see if anything had changed that might affect their

analysis, but nothing had changed. In March 2021, the Company notified Plaintiff that he was being replaced.

Based on the evidence, no issue of material fact exists. The documentation submitted by Plaintiff's treating physician clearly demonstrates that Plaintiff could not perform the essential functions of his role as identified by Defendant, outlined in the applicable job description, and determined by practical experience. Additionally, Plaintiff's performance evaluations, which he assisted in preparing and acknowledged, detail his performance deficiencies that led Defendant to terminate his employment. Lastly, the communications between the parties confirm that Defendant sufficiently engaged in an interactive process with Plaintiff at all relevant times. Plaintiff does not dispute that all requested accommodations were provided to him since his return from medical leave and that his restrictions and proposed accommodations were unchanged leading up to termination. Moreover, no accommodation existed that would have enabled Plaintiff to perform his essential functions or improve the deficiencies detailed in his performance evaluations. Indeed, all of Defendant's actions were lawful and based on legitimate and appropriate business reasons.

For the reasons set forth herein, and as further set forth in Defendant's moving brief, Plaintiff's claims fail as a matter of law and should be dismissed in their entirety.

## ARGUMENT

### I. PLAINTIFF COULD NOT PERFORM THE ESSENTIAL FUNCTIONS OF HIS JOB, WITH OR WITHOUT ACCOMMODATION

In this Reply, we will focus on two essential functions for which there can be no genuine dispute: (1) working overnight hours and (2) working in confined spaces, each of which was necessary for Defendant's IT personnel to reasonably perform their critical network troubleshooting tasks in the production facility, but Plaintiff could not do. The "inquiry into

whether plaintiff can *perform in a reasonable manner the activities involved in the job sought* under the NYSHRL is the same as the inquiry into whether plaintiff is qualified to perform the essential functions of the job sought under the ADA." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 252 (E.D.N.Y. 2015).

ADA regulations provide that a job function may be considered essential for any of several reasons. Among other reasons, a job function may be essential "because of the limited number of employees available among whom the performance of that job function can be distributed." *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (cited by Plaintiff on this point).

Based on this criteria, virtually all of Plaintiff's functions were essential as a matter of law. Very few employees were available to do what he did, which was highly specialized. It is undisputed that Plaintiff was one of just three individuals at the facility who performed his IT role, and one of the other two had medical issues requiring leaves of absence toward the end of Plaintiff's employment—meaning that often Plaintiff was one of just two workers available to perform his functions and sometimes he was ***the only one***. SOF Reply ¶¶ 51-52.[1] His work was highly specialized in that it required "specialized" "technical, electronic/computer training equivalent to two (2) years of college" plus "years of experience in an ERP supported manufacturing environment," with "Related Help Desk, Desktop, & Network Troubleshooting experience" preferred. Mattia Decl. Ex. D (Job Description).

In similar circumstances where individuals with specialized training worked on short-staffed units, the ability to work particular or extended hours has been deemed an essential function. *Di Iorio v. Cnty. of Suffolk*, No. 21-CV-01273 (JMW), 2024 WL 1908602, at *14 (E.D.N.Y. May 1, 2024) (must avoid "shortage of available PSD I workers to take 911 calls in

[1] "SOF Reply" refers to Defendant's Reply to its Rule 56.1 Statement of Facts, filed herewith.

emergency situations"); *accord McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 790 (8th Cir. 2019) (working overtime an essential function because "if [someone in plaintiff's role] were unable to work overtime, then either other employees would have to work overtime more often or the safety of [Defendant's] operations would be impaired"); *Wyatt v. Maryland Inst.*, No. CIV.A. RDB-10-2584, 2012 WL 739096, at *9–10 (D. Md. Mar. 7, 2012) ("eliminating mandatory overtime only for [plaintiff] was 'not operationally feasible' given the limited number of available employees").

With respect to the evidence considered in determining what is an essential function, Plaintiff repeatedly mischaracterizes what matters and how courts interpret that evidence (Opposition Br. at 6-10). Based on the logical and consistent application of those standards, courts routinely grant dismissal given similar facts.

First, it bears repeating that the two most central factors in the analysis, (i) the employer's judgment and (ii) the written job description, strongly support a finding that Plaintiff could not perform his essential functions. *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 127–28 (E.D.N.Y. 2014). Defendant's Director of Information Technology, Alvin Cunningham, affirms that "Brunckhorst needed IT professionals physically present or on call to work during overnight and early morning hours, when inventory began at midnight and peak production of the warehouse occurred between 2:00 a.m. and 7:00 a.m., in order to prevent lengthy disturbances." Cunningham Decl. ¶ 31. He further asserts that Brooklyn IT Systems Support Specialists work with cables, wires, and access points in attics, ceiling crawl spaces, and interstitial areas between floors, that most such items were housed in confined areas, and that the "network troubleshooting that made up a substantial portion" of the role "often required physically being in contact with those cables, wires, network hubs, and other access points." Cunningham Decl. ¶¶ 13, 24, 25.

Plaintiff affirms that his job description "listed the need to work various hours, including overnight and very early in the morning" and "work in confined areas, ceilings and attics." SOF Reply ¶ 11. Indeed, these are the first two functions Defendant lists in the "Work Environment" section of its Job Description for Plaintiff's role. Mattia Decl. Ex. D.

Plaintiff misrepresents the law and facts in claiming that the evidence is not indicative of these functions being essential and further claiming that there are genuine issues of fact as to whether Plaintiff could perform them.

Citing *McMillan*, Plaintiff contends that the Court must focus on "how the job is actually performed in practice" (Opposition Br. at 7, 10), ignoring that such practical realities only reaffirm that working overnight and in confined spaces are essential functions of the job. Such practical realities consist of the "time spent" performing the function, "consequences" of non-performance, and "work experience" of incumbents. Opposition Br. at 6.

It is undisputed that prior to his 2018 medical leave, Plaintiff's typical shift was an overnight shift beginning at 1AM due to the needs of the facility. SOF Reply ¶ 13. While Plaintiff argues overnight coverage is no longer needed and has not been since 2020, he concedes that Defendant still utilized IT personnel overnight for "emergency calls," including his non-disabled colleague Brian Cruz working "roughly two dozen shifts" that "began before 2:00AM" in the 18 months before Plaintiff's termination. Opposition Br. at 9. Moreover, the need for such overnight coverage appeared to be increasing when Defendant notified Plaintiff of his pending replacement in early March 2021. Entering that March, 4 of Cruz's most recent 13 shifts had been overnight, with 1 beginning at 2AM and the other 3 beginning around midnight. Cunningham Decl. Ex. A.

Plaintiff likewise agrees that his role involved working with cables, wires, and access points in confined spaces like attics, ceiling crawl spaces, and interstitial areas between floors

(SOF Reply ¶ 13) and there was always the possibility that an IT person would have to physically locate them to perform such work, though Plaintiff deems it "infrequent" (SOF Reply ¶ 40).

These facts differ starkly from the cases cited by Plaintiff, most notably including *McMillan*, *Stone*, *Henchey*, and *Hall* (all of the cases he cites multiple times), and rather align with cases distinguishing them in finding an inability to perform essential functions warranting dismissal of plaintiff's claims. Only the employer's asserted judgment weighed in its favor in *McMillan* and *Stone*, and only the job description in *Henchey* (contradicted by employer's sworn statements, 831 F. Supp. At 966). *Stone* and *Hall* each dealt with a function that no worker in the position had ever actually been asked to perform in their established history spanning decades. *Stone*, 118 F.3d at 99–100; *Hall*, 857 F.2d at 1079. In *McMillan*, a formal flex-time policy directly undermined the employer's argument that fixed hours were essential. 711 F.3d at 123.

In contrast, where the function at issue has been performed by individuals in the position and it is deemed necessary by defendant's judgment and/or included in the job description, summary judgment is routinely granted for defendant. *See Carey v. Cnty. of Albany,* No. 114 Civ. 420 (GLS)(CFH), 2016 WL 4098598, at *4-5 (N.D.N.Y. July 28, 2016) (distinguishing *Stone* and *McMillan*); *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 131–32 (E.D.N.Y. 2014) (distinguishing *Stone*).

As for the consequences, Plaintiff wrongly asserts that because emergencies are infrequent and no catastrophes resulted from him sometimes being the only IT person available and not working overnight, there are no or "negligible" demonstrable negative consequences to non-performance and the functions are not essential. Opposition Br. at 9. Plaintiff has it backwards. Because there were days when he was the only IT person available, his inability to work overnight (or pre-dawn) and his inability to work in confined spaces threatened Defendant's operations

substantially and rendered these functions essential by definition. *See Davis v. Bombardier Transp. Holdings (USA) Inc.*, 2013 WL 6816605, at *11 (E.D.N.Y. Dec. 24, 2013), *aff'd*, 794 F.3d 366 (2d Cir. 2015) (holding where overtime was only required during occasional emergency conditions and defendant was short-staffed, "such overtime must be considered an essential job requirement"). Defendant is best-positioned to determine what is required for its operations and what is an acceptable risk, not Plaintiff or even any court, and its judgment in this regard should not be second-guessed. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1176 (10th Cir. 1999) ("It is not the province of the court to undermine the legitimate operation of a production facility. In many situations, an employer may create a position, the nature of which, requires an employee to perform a multitude of tasks in a wide range of environments.").

Regardless, Plaintiff effectively concedes that the functions are highly consequential. He does not dispute that Defendant would expend additional labor costs and experience a substantial financial loss if production were shut down or delayed due to connectivity or other system failures. SOF Reply ¶¶ 46-49. Plaintiff also does not dispute that an outage, or full connectivity loss, has been a constant threat to the business, especially during the peak early morning hours. *Id.* ¶ 50. Finally, Plaintiff does not dispute that Plaintiff being the only IT support professional covering the facility at times "posed tremendous danger to operations given that Plaintiff could only work during daylight hours." SOF Reply ¶ 53.

Having established that the functions are essential, the question becomes whether Plaintiff could perform them—and clearly he could not, regardless of any argument he now may assert. Based on the February 2021 ADA Form that outlines Plaintiff's permanent restrictions, it is evident that Plaintiff could not perform the essential functions of the role with or without a reasonable accommodation, including working overnight hours and/or in confined spaces. His treating

physician explicitly wrote, "[C]an only work in daylight hours. Cannot work in confined spaces." SOF Reply ¶ 80. Defendant and this Court are entitled to rely on the statements of Plaintiff's physician in assessing his restrictions. Moving Br. at 12-13.

Given the unambiguous statements of his physician that he could not perform the essential functions, combined with the fact that at times Plaintiff was the only person available to perform his role, it is apparent that no accommodation was possible and Plaintiff's claim must be dismissed. Moving Br. at 13.

## II. PLAINTIFF CANNOT OVERCOME DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY REASON FOR TERMINATION

As a threshold matter, Plaintiff's Opposition brief, which was prepared by or with the assistance of the City Bar Justice Center (*see* ECF No. 107), fails to address Plaintiff's performance deficiencies underpinning Defendant's decision to terminate Plaintiff and does not dispute Defendant's legitimate non-discriminatory reason for termination. As such, Plaintiff has conceded that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff and has abandoned any argument that such reason was pretextual. *Hyek v. Field Support Serv., Inc.*, 702 F.Supp.2d 84, 102-03 (E.D.N.Y. 2010) (granting summary judgment in favor of the defendant with respect to the plaintiff's hostile work environment claim because the plaintiff failed to address the defendant's arguments against that claim in her opposition to the defendant's summary judgment motion); *Maher v. All. Mortg. Banking Corp.*, 650 F.Supp.2d 249, 267-68 (E.D.N.Y. 2009).

Beyond the brief itself, the absence of factual disputes is glaring. Throughout the Statement of Facts, Plaintiff either responds that the asserted fact is "Undisputed" or responds by making an assertion about similar subject matter without controverting any part of Defendant's statement. *See* SOF Reply. Each paragraph in Defendant's Rule 56.1 Statement is "deemed to be admitted unless specifically controverted" by cited, admissible evidence, *Walker v. City of New York*, 63 F. Supp.

3d 301, 306 n.4 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 74 (2d Cir. 2015), and to defeat summary judgment, Plaintiff "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [Defendant] were false, and that more likely than not [discrimination or retaliation] was the real reason" for her dismissal. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000); *accord Galimore v. City Univ. of New York Bronx Cmty. Coll.,* 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (dismissing discrimination, hostile environment, and retaliation claims).

Assuming, *arguendo*, Plaintiff has not abandoned this point, the documentary evidence clearly demonstrates that there was a legitimate, non-discriminatory reason for Plaintiff's termination, *i.e.*, his continuing subpar performance. SOF Reply ¶¶ 57-75. As further addressed in Defendant's moving brief, Plaintiff's inability and unwillingness to become more proficient in matters involving network infrastructure, and the Oracle platform in particular, resulted in the decision to terminate him. *See* Moving Br., Point II(B).

Additionally, Plaintiff has not supplied any basis for finding pretext; his purported belief that others had the same knowledge and performance as him (SOF Reply ¶¶ 65-67) does not establish discriminatory animus or pretext. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997). Plaintiff has adduced no evidence regarding the relevant performance of such possible comparators, including with respect to their Oracle knowledge, related skill development and performance, annual goals, and repeated failures to achieve or make progress with those goals like Plaintiff. In such circumstances, there is no basis to find that Defendant's "articulated reason for its decision is in fact a pretext for discrimination," and summary judgment must be granted. *Id.* at 66.

## III. DEFENDANT ENGAGED IN THE INTERACTIVE PROCESS

Pursuant to the Court's Order dated June 24, 2025, any allegation that Defendant failed to engage in the interactive process prior to Plaintiff's termination has been dismissed as time-barred and is therefore irrelevant to the remaining claims. ECF No. 76. Notwithstanding the foregoing, the evidence demonstrates that Defendant consistently engaged in the interactive process in good faith and worked extensively with Plaintiff to accommodate him, despite Plaintiff's inability to satisfy the requirements of his role as set forth in his job description. In fact, contrary to the contentions in Plaintiff's Opposition, Plaintiff does not dispute the following: Defendant provided all accommodations requested by Plaintiff's treating physician; Plaintiff's accommodations upon his return from leave included working a modified, part-time schedule (which eventually ramped up) and performing IT support through remote sessions; in early 2021, Human Resources and IT Management discussed Plaintiff's performance appraisals and deficiencies, as well as his inability to perform the essential functions of his role, and how the Brooklyn IT team was supporting operations; around that same time, Human Resources requested and reviewed an updated ADA Accommodation Form dated February 11, 2021 from Plaintiff's treating physician; and the proposed accommodations outlined in that form essentially turned a "hands-on job with odd hours into a sedentary job with office hours." SOF Reply ¶¶ 18, 20, 76-82.

In addition, and as evidenced by an email requested by Plaintiff in or around the first week of March 2021, Human Resources discussed with Plaintiff that they conducted a thorough review of the paperwork that his treating physician completed and that Defendant could not continue to accommodate his restrictions. *See* Mattia Decl. Ex. H. At no time was Plaintiff advised differently, but assuming, *arguendo*, that his supervisor stated not to worry about his position (which Defendant denies), such a statement does not demonstrate that Defendant discriminated against Plaintiff based on his disability or that Defendant failed to engage in the interactive process.

Indeed, Defendant satisfied the factors identified by the Second Circuit as indicative of participation in a good faith interactive process. *Frilando v. New York City Transit Auth.*, 513 F.Supp.3d 356, 365 (S.D.N.Y. 2021) (finding a good-faith interactive process where the employer corresponded with the plaintiff over an extended period, sought information and documentation concerning the employee's disability and limitations, attempted to clarify the employee's requests, considered those requests, and discussed alternative accommodations).

Moreover, there can be no cognizable claim for failure to engage in the interactive process "in the absence of evidence that accommodation was possible," which does not exist here. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 98 (2d Cir. 2015).

## IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER STATE AND LOCAL LAW

As addressed in Defendant's prior memorandum of law, to the extent this Court chooses to exercise supplemental jurisdiction on Plaintiff's claims under the NYSHRL and NYCHRL, such claims similarly fail for the reasons set forth above and previously. *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 103-05 (2d Cir. 2003); Moving Br. at 16-17. Alternatively, this Court may decline to exercise supplemental jurisdiction and dismiss the claims under NYSHRL and NYCHRL on such grounds. *Di Iorio v. Cnty. Of Suffolk*, 2024 WL 1908602, at *21 (E.D.N.Y. May 1, 2024).

## CONCLUSION

For all of the reasons set forth above and set forth in Defendant's underlying motion papers, Defendant respectfully requests that this Court grant summary judgment in its favor and dismiss all of the claims asserted by Plaintiff against Defendant in their entirety, with prejudice.

Dated: New York, New York
June 15, 2026

Respectfully Submitted,

SPENCER FANE LLP

By: *_/s/ Jeffrey A. Miller_*

Jeffrey A. Miller
Sonali Setia
711 Third Avenue
New York, New York 10017
Tel: (212) 907-7300
Fax: (212) 754-0330
jmiller@spencerfane.com
ssetia@spencerfane.com

*Attorneys for Defendant*

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1 and Individual Practice Rule 5, it is hereby certified that the word court of this memorandum of law is 3,371 words, exclusive of the caption, table of contents, table of authorities, and signature blocks.

Dated: New York, New York
June 15, 2026

Respectfully Submitted,

SPENCER FANE LLP

By: *<u>/s/ Jeffrey A. Miller</u>*

Jeffrey A. Miller
Sonali Setia
711 Third Avenue
New York, New York 10017
Tel: (212) 907-7300
Fax: (212) 754-0330
jmiller@spencerfane.com
ssetia@spencerfane.com

*Attorneys for Defendant*